1   ROBERT F. KANE, ESQ. (State Bar No. 7l407)
    LAW OFFICES OF ROBERT F. KANE
2   870 Market Street, Suite 1128
    San Francisco, CA  94l02
3   (4l5) 982-l5l0

4   KEITH OGDEN, ESQ. (State Bar No. 273129)
    COMMUNITY LEGAL SERVICES OF EAST PALO ALTO
5   2117-B University Avenue
    East Palo Alto, CA 94303
6   (650) 326-6440

7   STANLEY R. FRAZIER, ESQ. (State Bar No. 114803)
    LAW OFFICES OF STANLEY R. FRAZIER
8   870 Market Street, Suite 1128
    San Francisco, CA  94102
9   (415) 362-3035

10  Attorneys for Plaintiffs
    Antonio Rosales and Carmen Rosales
11

12              UNITED STATES DISTRICT COURT

13      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

14                                          | Case No. 5:13-cv-01316-LHK
    ANTONIO ROSALES AND CARMEN              |
15  ROSALES,                                | Bankruptcy No.  11-52181
16          Plaintiffs,                     | Adversary. Proceeding No.: 12-05018
17  vs.                                     | **OPPOSITION TO MOTION TO
                                            | DISMISS FILED BY DEFENDANTS**
18  VICKY ALVAREZ ROSALES, et al,           | **WELLS FARGO, JP MORGAN, AND
                                            | EMC**
19          Defendants.                     |
                                            | **Date: April 10, 2014**
20                                          | **Time: 1:30 p.m.**
                                            | **Courtroom: 8 (4th Floor)**
21                                          | **Judge Hon. Lucy H. Koh**
22

23

24

25

26

27

28

OPPOSITION TO MOTION TO DISMISS
FILED BY WELLS FARGO, JP & EMC

1

## TABLE OF CONTENTS

2  Introduction ..................................................... 1

3  Statement of Facts ............................................... 1

4  Argument

5       I. Legal Standard Governing Motion to Dismiss…………………………6

6      II. Argument

7           A.    Plaintiffs' Causes of Action for Violation of
                    Fair Housing Act, Aiding and Abetting Fraud,
8                      Financial Elder Abuse and CCC 17200, and Negligence
                    Are Not Time Barred…………………………………………....7

9
         B.    The First, Fourth Sixth, Seventh and Ninth Causes
10                      of Action State a Claim Against Defendants….....…….....11

11           C.    Plaintiffs Have Stated a Cause of Action for
                    Violation of Cal. Business and Professions Code
12                      17200……………………………………………………14

13           D.    Plaintiffs have stated a Cause of Action for
                    Wrongful Foreclosure…………………………………..16
14
         E.    Plaintiffs have Stated a Timely Cause of Action for
15                      Negligence………………………………….. ……………..17

16           F.    Plaintiffs Can State a Cause of Action for Quiet
                    Title………………………………………………...…18
17
         G.    Declaratory Relief……………………………………19
18

19  Conclusion……………………………………………….……..…20

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

3

**Cases**                                                                    **Page**

4

*Allison v. California Adult Authority*
   419 F.2d 822 (9th Cir. 1969)……………………………………………7

5

*Angeles Chem. Co. v. Spencer & Jones,*
   44 Cal. App. 4th 112, 119-120……………………………………10

6

7

*Berryman v. Merit Prop. Mgmt., Inc.*
152 Cal.App.4th 1544, 1559 (2009) ........................................... 12

8

*Biggins v. Wells Fargo & Co.,*
   266 F.R.D. 399, 413 (N.D. Cal. 2009 .................................. 16

9

*Byars v. SLME Mortgage Brokers, Inc.*
   109 Cal.App.4th 1134 (2003)   ...........................................15

10

11

*Cahill v. Liberty Mut. Ins. Co.,*
   80 F.3d 336 (9th Cir. 1996)................................................. 6

12

13

*Camsi IV v. Hunter Technology Corp.,*
   230 Cal. App. 3d 1525, 1535……………………………………10

14

*Cel-Tech Communications v. L.A. Cellular.*
   20 Cal.4th 163 (1999)……………………………………………14

15

16

*Central Construction Co. v. Hartman,*
   7 Cal.2d 703, 709 (1935) ...................................... 18

17

*Claremont Terrance Homeowner's Ass'n. v. U.S.,*
   146 Cal.App.3d 398, 408 (1983) ........................................ 18

18

19

*Comm. on Children's Tel. v. General Foods Corp.*
   35 Cal.3d 197 (1983) ...................................... 15

20

*Dorell v. Sharp Healthcare*
   183 Cal.App.4th 1350 (2010)  ............................... 15

21

22

*El Pollo Loco, Inc. v. Hashim,*
   C.A. 316 F.3d 1032, (9th Cir. 2003) ...................................... 10

23

*Erickson v. Pardus*
   551 U.S. 89 (2007). ...................................... 6

24

*Fayetteville Investors v. Commercial Builders, Inc.,*
   936 F.2d 1462 (4th Cir. 1991)................................................. 6

25

26

*Fisher v. Allis-Chalmers Corp.*
   95 Cal.App.4th 1182 (2002) ........................................ 13

27

28

OPPOSITION TO MOTION TO DISMISS
FILED BY WELLS FARGO, JP & EMC

1

2

*Gilligan v. Jamco Dev. Corp.,*
   108 F.3d 246 (9th Cir. 1997) .................................................................. 7

*Gonzalez v. Ameriquest*
   2004 U.S. Dist. LEXIS 22705, *16-17 (N.D. Ca. 2004) ...................... 8

*Havens Realty v. Coleman*
   45 U.S. 363, 381-82 (1982) ................................................................ 8

*Henry v. Lehman Comm. Paper, Inc.*
   471 F.3d 977 (9th Cir. 2005) ............................................................ 12

*Huynh v. Chase Manhattan Bank,*
   465 F.3d 992, 1003-04 (9th Cir. 2006) .............................................. 8

*Inline Inc. v. A.V.L. Holding Co.*
   125 Cal.App.4th 895 (2005) ............................................................ 15

*Jablon v. Dean Witter& Co.,*
   614 F.2d 677, 682 (9th Cir. 1980) ...................................................... 8

*Jolley v. Chase Home Finance, LLC,*
   213 Cal.App.4th 872 (2013) ............................................................ 18

*Kasky v. Nike, Inc.,*
   27 Cal.4th 939 (2002). ...................................................................... 15

*King v. California*
   784 F.2d 910 (9th Cir. Cal. 1986) ...................................................... 8

*Klein v. Earth Elements,*
   59 Cal. App. 4th 965, 969 (1997) .................................................... 16

*Lee v U.S. Bank,*
   U.S. Dist. LEXIS 66182 (N.D. Cal. 2010)......................................... 19

*Lona v. Citibank, N.A.,*
   702 Cal.App 4th 89, 112 (2011) ...................................................... 19

*Mabry v. Superior Court,*
   185 Cal.App.4th 208, 225 ................................................................ 16

*Magdaleno v. Indymac Bancorp., Inc.*
   U.S. Dist. LEXIS 13561 (E.D. Ca. 2011 ........................................ 16

*Marcelos v. Parada*
   2008 U.S. Dist. LEXIS 91155 (N.D. Ca. 2008).............................. 12

*Morgan v. AT&T Wireless, Inc.*
   177 Cal.App.4th 1235 (2009) .......................................................... 14

*Neitzke v. Williams*
   490 U.S. 319 (1989) .......................................................................... 6

*Newsome v. Country wide Home Loans, Inc.*
  2010 U.S. Dist. LEXIS 12683 *15 (N.D. Ca. 2010)............................ 17

*Oholini v. Bank of America,*
  2011 U.S. Dist LEXIS 92900 *16 (N.D. Ca. 2011)............................ 17

*Pareto v. F.D.I.C.,*
  139 F.3d 696 (9th Cir. 1998)............................................... 6

*Pastoria v. Nationwide Ins.*
  112 Cal.App.4th 1490 (2003) ............................................. 14

*Peloza v. Capistrano Unified School Dist.*
  37 F.3d 517 (9th Cir. 1994)............................................... 6

*People v. E.W.A.P., Inc.*
  106 Cal.App.3d 315 (1980)…………………………………………12

*People v. Fremont Life Ins. Co.,*
  104 Cal.App.4th 508, 519 (2002)……………………………………15

*Plascencia v. Lending 1st Mortgage*
  583 F.Supp.2d 1090 (N.D. Ca. 2008) …………………………..………8

*Rubio v. Capital One* Bank
  613 F.3d 1195 (9th Cir. 2010)............................................ 16

*Saldate v. Wilshire Credit Corp.,*
  686 F. Supp. 2d 1051, 1061-62 (E.D. Cal. 2010) ............................... 17

*Santa Maria v. Pacific Bell,*
  202 F.3rd3 1170, 1178 (9th Cir. 2000) ................................... 8

*Saunders v. Superior Court*
  27 Cal.App.4th 832 (1994) ............................................... 6

*Searle v. Wyndham International, Inc.*
  102 Cal.App.4th 1327 (2002) ............................................. 15

*Stoll v. Runyon,*
  165 F.3d 1238, 1242 (9th Cir. 1999) ...................................... 8

*United States v. Redwood City*
  640 F.2d 943 (9th Cir. 1981)............................................... 7

*Wagner v. Benson,*
  101 Cal. App. 3d 27, 35 (1980)........................................... 17

*Wilbur v. Wilson*
  179 Cal.App. 314, 316 (1960)............................................ 10

*Yao v. Deutsche Bank Nat'l Trust Co. Ams.*
  525 Fed. App x 606, 609 (9th cir. 2013)................................. 18

OPPOSITION TO MOTION TO DISMISS
FILED BY WELLS FARGO, JP & EMC

1

**STATUTES**

2

United States Code

3

15 U.S.C. §1635.....................................................................................7

4

California Business and Professions Code

5

Section 17200………………………………………………………15

6

California Civil Code

7

Section 28246(c)…………………………………………………….18
Section 1632…………………………………………………...…..6

8

Section 2923.5………………………………...……………….16, 17

9

Federal Rules of Civil Procedure

10

Rule 8(a)(2)………………………………………………………….4
Rule 12(b)(6)………………………………………………………..1

11

Rule 15(a)………………………………………………...………..5

12

OTHER SOURCES

13

"Subprime Mortgage Meltdown & the Global Financial Crisis"
14 Fordham J. Corp. & Fin. L 1, (2008)………………………...…..9

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO DISMISS
FILED BY WELLS FARGO, JP & EMC

**INTRODUCTION**

Defendants Wells Fargo Bank, N.A. as trustee for the Certificate holder of Structured Asset Mortgage Investment II Inc., Bear Sterns Mortgage Funding Trust 2006-AR-3 Mortgage Funding Trust 2006-AR-3 ("Wells Fargo"), JP Morgan Chase Bank, N.A. ("JP Morgan") and EMC Mortgage, LLC ("EMC" or collectively "Moving Defendants") have moved this Court to dismiss each of the Plaintiffs, Antonio ("Antonio")[1] and Carmen Rosales' ("Carmen" or collectively "Plaintiffs") First Amended Complaint ("Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") on the basis that the complaint is time barred and otherwise fails to state any claims against any of these Moving Defendants.

For the reasons set forth below, Moving Defendants' motion must be denied or alternatively, Plaintiffs must be afforded leave to amend.

**STATEMENT OF FACTS**

Plaintiffs, Mr. and Mrs. Rosales, husband and wife for over 50 years, are limited English proficient and illiterate in English.  In 1994 they bought a home which they have maintained and paid for but, which is presently in foreclosure as a consequence of predatory practices on the part of the Defendants and because the Moving Defendants, after accepting thousands of dollars in mortgage payments from the Plaintiffs, have now refused to accept further payment from them or to recognize Plaintiffs' right to modify and make payments on the loan on their home.

Plaintiffs have owned and lived in their home located at 1837 Drew Avenue, Mountain View, California ("Home") since 1994 when they paid $175,000 to purchase the Home, making a down payment of $19,000.   The Plaintiff's were first time homebuyers, financially inexperienced, limited English proficient, and unfamiliar with the concepts of title and

---

[1] Since this action was filed, Antonio has died and his daughter Socorro Rosales was appointed administrator of his estate in Santa Clara Superior Court No. 113PR172660.  A copy of the letters of administration is attached as Exhibit 1to Plaintiffs' Request for Judicial Notice.

mortgage. They relied on their real estate agent for guidance and as a result, title to their Home was placed in the name of Plaintiffs' oldest daughter Socorro Rosales ("Socorro") and her husband Brigido Avila, who would also be living in the Home, and Plaintiffs' nephew Ramon Rivera and his wife Alma. Although Plaintiffs were not on title, the Home belonged to Plaintiffs and they made the payments, taxes, utilities, insurance and otherwise maintained their Home. Socorro collected the cash for the mortgage payments from the Plaintiffs and made the mortgage payments.

In September 2000, when Socarro and her husband moved out, record title on the Home was placed in Plaintiffs' name and in that of their son Salvador Rosales ('Salvador"). Thereafter, Salvador's wife Vicky Rosales ("Vicky") was added to record title. Neither Salvador nor Vicky provided any consideration for being on title and it was understood that neither had an interest in the Home, although they resided in the Home and paid rent to Plaintiffs. Replacing his sister, Socorro, Salvador took over collecting cash and making the payments on the mortgage

In 2002, Salvador requested a loan from his parents and suggested that Plaintiffs refinance the Home to provide him with some additional money and Plaintiffs agreed on the condition that Salvador and Vicky would pay the difference in the increased mortgage payments. The Home was refinanced through Indymac Bank for $205,000; Vicky and Salvador received the cash proceeds of approximately $39,000 from the refinance, and the monthly payments rose to approximately $1,700. Salvador and Vicky paid the difference between the old loan payment and the new one and continued to live in the Home with the Plaintiffs.

In 2006, Salvador told Antonio that he was arranging for another refinance to reduce the monthly mortgage payment that would not increase the principal amount and asked Plaintiffs to go to San Mateo to sign papers at the offices of codefendant Mortgagepointer.com,

OPPOSITION TO MOTION TO DISMISS
FILED BY WELLS FARGO, JP & EMC

Inc. ("Mortgagepointer").

At the time of this meeting on July 15, 2006, Plaintiffs were falsely induced into signing a quitclaim deed transferring their title to Salvador and Vicky.  This deed enabled Vicky and Salvador to obtain a loan for $340,000.00 secured by Plaintiffs' Home from which Salvador and Vicky obtained all the loan proceeds in an amount in excess of $135,000.  This was done without Plaintiffs' knowledge or consent.

Unable to read the loan documents because they are illiterate in English, Plaintiffs were reassured in Spanish by a Spanish-speaking representative of Mortgagepointer that no cash would come out of the equity of their Home.  This representation was false and could not have been discovered by the Plaintiffs because even though they were on title at the time of the loan application and at the time that the loan documents were signed, Plaintiffs did not receive written disclosures regarding the loan or its terms, either in English or in Spanish, nor were they provided with disclosures mandated by the Truth in Lending Act ("TILA"), or any other closing or loan documents.  Plaintiffs do not believe that a notary was present (or did not speak with a notary) when they signed the deed even though the loan documents appear to be notarized and bear the signature and stamp of a notary, Alisha Mishon Caroll, who was apparently an agent or employee of codefendant North American Title ("North American").

While Plaintiffs understood that both title to their Home and the equity in their Home would be unimpaired, in fact, the defendants conspired to deprive them of both.  Two inconsistent deeds had been executed at that meeting; one showing Plaintiffs relinquishing their title and another one confirming their title.  North American did not record the deed transferring the Home back to Plaintiffs until a full week after the loan funded.  See Exhibits 2 & 3 to Plaintiffs' Request for Judicial Notice.  The substance of the deeds were not revealed to the Plaintiffs and were instrumental to the plan to steal the equity in their Home and then to

OPPOSITION TO MOTION TO DISMISS
FILED BY WELLS FARGO, JP & EMC

obscure the theft.  In doing these acts Defendants relied on the Plaintiffs' advanced age, their inability to read English, and actively concealed the true facts related to the refinance transaction.

Bear Stearns Residential Mortgage Corp.  ("Bear Stearns") also played a central role in the swindle of the Plaintiffs.  They or their agent were required to deliver TILA disclosures to all persons having an interest in the Home and with knowledge that the Plaintiffs had an ownership interest in the Home, failed to deliver the statutorily mandated disclosure notices to the Plaintiffs.  If these notices had been provided, Plaintiffs would have had the opportunity to discover that they had been defrauded and could have taken action.

JP Morgan subsequently acquired Bear Stearns.  The loan was serviced by EMC.  At some unknown date the loan was made part of a securitized pool of which Wells Fargo was the trustee.  Plaintiffs do not have the pooling agreement so they cannot determine if the loan was properly included.

Bear Sterns made a lucrative business of buying bad loans, and was one of the biggest underwriters of complex instruments linked to mortgages.  See John Waggoner and David J. Lynch, *Red Flags in Bear Stearn's Collapse*, 3/19/08, http://www.usatoday.com/money/industries/banking/2008-03-17-bearstearnsbailout_N.htm, attached as Exhibit 4 to Plaintiffs' Request for Judicial Notice.  Bear Stearns demand for such mortgages, regardless of their quality, was great.  See Abagail Field, *Did Bear Stearns Know Its Mortgage Securities Were a House of Cards,* 1/28/11, http://www.dailyfinance.com/2011/01/28/bear-stearns-mortgage-backed-securities-lawsuit-fraud-wells-fargo, attached as Exhibit 5 to Plaintiffs' Request for Judicial Notice. EMC was a subsidiary of Bear Stearns. (*Ibid.*)

JP Morgan acquired Bear Stearns knowing of the toxic mortgages.  (*Ibid.*)  In fact,

Wells Fargo has sued JP Morgan and EMC claiming that it knowingly purchased toxic mortgages to obtain the profits of securitization.  (*Ibid.*)  It is also clear, in hindsight, that lenders targeted minority Latino and black communities and made more lucrative (expensive) subprime and potentially predatory loans in minority neighborhoods where borrowers often paid as much as $600 per month more for the same loan than their substantially similar white counterparts.  *Testimony of Kevin Stein before the Financial Crisis Inquiry Committee,* Sacramento California, September 23, 2010, attached as Exhibit 6 to Plaintiffs' Request for Judicial Notice.

In 2008, tragedy struck the Plaintiffs and their son Salvador died, they began making the mortgage payments directly to EMC.  Because they did not get the mandated disclosures, they were unaware of the loan terms and loss of equity until they consulted Community Legal Services in East Palo Alto ("CLS") in the summer of 2010 when they learned their Home was in foreclosure.  During this time Plaintiffs were not sure what was going on and continued to make payments to EMC.  Eventually, CLS discovered that there had been a new loan to which Plaintiffs were not a party and began negotiations with the Moving Defendants to stop the foreclosure and modify the loan pursuant to the Federal Loan Modification program and make lower payments.  While Plaintiffs qualified under the HAMP program for a modification, the Moving Defendants declined to enter into a modification and took the position that they could not deal with the Plaintiffs as they were not a party to the loan.

To address the pending trustee's sale and redress the issues raised in this action, Plaintiffs filed bankruptcy to seek a ruling of the Court and invoke the protection of the automatic stay.  Wells Fargo and JP Morgan jointly filed a claim seeking to recover $418,885.35, including arrears of $36,831.55.  This claim is excessive as it does not take into account payments made by Plaintiffs or the offset claim they have as a result of not being

OPPOSITION TO MOTION TO DISMISS
FILED BY WELLS FARGO, JP & EMC

provided with the requisite TILA disclosures.  As a result of this Court's order withdrawing the reference as to certain claims, this matter is still pending before the bankruptcy court.

Plaintiffs have not been able to undertake any discovery due to the pending motions to dismiss.  For the reasons set forth below, Plaintiffs have valid claims against the Moving Defendants both for their own misconduct and their misconduct in aiding and abetting the fraud and elder abuse perpetrated by the codefendants.

### LEGAL STANDARD GOVERNING MOTION TO DISMISS

The FRCP requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  FRCP 8(a)(2); see *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513 (2002).  Specific facts are not necessary, the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.  *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

A rule 12(b)(6) motion to dismiss, like a common law general demurrer, tests the legal sufficiency of the claim or claims stated in the complaint.  *Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1471 (4th Cir. 1991).  In resolving such a motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and, (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Courts must assume that all general allegations "embrace whatever specific facts might be necessary to support them."  *Peloza v. Capistrano Unified School Dist.*, 37 F.3d 517, 521 (9th Cir. 1994).  A court accepts as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them.  *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).  No matter how improbable the facts alleged are, they must be accepted as true.  *Neitzke v. Williams,* 490 U.S. 319, 328-329 (1989).  The court's role is not to decide who will

OPPOSITION TO MOTION TO DISMISS
FILED BY WELLS FARGO, JP & EMC

prevail but only whether plaintiff is entitled to offer evidence to support their claim.  *Allison v. California Adult Authority,* 419 F.2d 822, 823 (9th Cir. 1969).

The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.  *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997).  "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff cannot."  *Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Such a dismissal is proper only in extenuating cases.  *United States v. Redwood City,* 640 F.2d 943, 966 (9th Cir. 1981).  As Chief Judge Kozinski has written: "[s]o long as the Plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceeding when the Plaintiff's case can be rejected on evidentiary grounds."  *Balderas v. Countrywide Bank,* 664 F.3d 787, 790 (9th Cir. 2009).

In the event that the Court sustains Moving Defendants' motion in any part, Plaintiffs must be afforded leave to amend.  Leave to amend should be freely granted.  FRCP 15(a)(2).

# I.
## ARGUMENT

### A.
**PLAINTIFFS CAUSES OF ACTION FOR VIOLATION OF THE FAIR HOUSING ACT (FIRST CAUSE OF ACTION), AIDING AND ABETTING FRAUD (FOURTH CAUSE OF ACTION), FINANCIAL ELDER ABUSE (SIXTH CAUSE OF ACTION), CALIFORNIA CIVIL CODE SECTION 17200 (SEVENTH CAUSE OF ACTION), AND NEGLIGENCE (NINTH CAUSE OF ACTION) ARE NOT TIME BARRED**

Moving Defendants contend that Plaintiffs' first causes of action for violation of the federal and state Fair Housing Acts ("FHA" [federal] "FEHA" [state]), fourth cause of action for aiding and abetting fraud, sixth cause of action for financial elder abuse, seventh cause of action for violation of California Civil Code section 17200 and ninth cause of action for negligence are all barred by the statute of limitations as a matter of law.  This Court must reject these claims because, as set forth below, each of these causes of action are subject to the

OPPOSITION TO MOTION TO DISMISS
FILED BY WELLS FARGO, JP & EMC

discovery rule and tolling.

Courts have found that "(w)hen equitable tolling is at issue, its applicability generally depends on matters outside the pleadings, so it is rarely appropriate to grant a 12(b)(6) motion to dismiss (where review is limited to the complaint) if equitable tolling is at issue." *Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 1003-04 (9th Cir. 2006), see *Plascencia v. Lending 1st Mortgage* 583 F.Supp.2d 1090 (N.D. Ca. 2008) [pleading of equitable tolling sufficient so facts could be determined in discovery]  A district court may dismiss a claim "[i]f the running of the statute is apparent on the face of the complaint," but, may do so "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter& Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

Statutes of limitation can be extended by equitable tolling where the plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence. *King v. State of Cal.* (9th Cir. 1986) 784 F.2d 910, 915; see *Gonzalez v. Ameriquest* 2004 U.S. Dist. LEXIS 22705, *16-17 (N.D. Ca. 2004) [Spanish speaking borrowers never received loan documents translated into Spanish and therefore had no way of knowing of TILA violations]. "If a reasonable plaintiff would not have known of the existence of a possible claim ... then equitable tolling will serve to extend the statute of limitations ... until the plaintiff can gather what information he needs." *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999).

First, Moving Defendants seek to dismiss Plaintiffs' first cause of action for violation of the Fair Housing Acts as time barred based on a two year statute of limitations.  A court may toll the statute of limitations for such violations if the person bringing the suit demonstrates that despite due diligence he or she was unaware of the violation.  *Santa Maria v. Pacific Bell*, 202 F.3rd3 1170, 1178 (9th Cir. 2000).  Apart from the foregoing, the statute of limitations may be tolled if the violation continues into the limitations period. *Havens Realty v. Coleman* 45 U.S.

OPPOSITION TO MOTION TO DISMISS
FILED BY WELLS FARGO, JP & EMC

363, 381-82 (1982); see *Lyle v. Warner Bros. Tel. Prod.* 38 Cal.4th 264, 278 [courts look to federal courts when interpreting FEHA].

In the case at bar, defendants hid the true facts of the deed and loan transactions from the Plaintiffs.  Indeed, they lied to Plaintiffs about the nature of the transaction and the documents that Plaintiffs were asked to sign – telling them that they would not be taken off title to their Home and that no further indebtedness would be added to that already owed on the Home.  They mislead the Plaintiffs and outright lied to them, knowing that they were not likely to be found out because Plaintiffs were limited English proficient, illiterate in English, and financially naïve.  Plaintiffs were unable to discover that they had been tricked into signing away title not only because they were lied to and misled but, contrary to Moving Defendant's claim, they were not given any consumer documents related to the transfer of title or the refinance of the Home as required of Lenders governed by TILA.[2]  Moreover, Moving Defendants, their agents or predecessors, aided and abetted Salvador and Vicki's fraudulent conduct.

The lies and misrepresentations that underpinned the transfer of title were then continued by Bear Stearns, EMC and Wells Fargo when they ignored the red flags which would have been evident from the closing and escrow files which contained both deeds of trust, and title searches that showed a brief and suspicious gap in Plaintiffs' title to their Home.  This type of title shell game is a hallmark of suspicious activity and was prevalent in loans made in

_____
[2] Under Regulation Z, a consumer is defined as an individual with an ownership interest in the property that is subject to a security interest.  12 C.F.R. §226.2(a)(11); *In re Crevier*, 820 F.2d 1553, 1557 (9th Cir. 1987).  TILA is meant to be liberally construed and apply to all disadvantaged consumers, not just to the specific borrowers on a loan. *Mourning v. Family Publications Serv. Inc.*, 411 U.S. 356, 377 (1973); *Eby v. Reb Realty, Inc.*, 495 F.2d 646, 650 (9th Cir. 1974).  TILA's statute of limitations does not bar a person from asserting a TILA violation in an action to collect the debt.  Plaintiffs may raise the TILA as a defense by recoupment or set offset in such action except as otherwise provided by state law. 15 USC §1640(e); see also 15 U.S.C. §1635(i)(3).  Consequently, Plaintiffs raise TILA only as a defense by recoupment or offset.

OPPOSITION TO MOTION TO DISMISS
FILED BY WELLS FARGO, JP & EMC

minority communities. This conduct is emblematic of discrimination against protected categories of homeowners who were encouraged by lenders and loan brokers to remove females, elders and minorities who are generally lower wage earners, from title so as to make the loan look better to loan underwriters and federal agencies. See Exhibit 7 to Plaintiffs' Request for Judicial Notice. Instead these Moving Defendants accepted moneys from Plaintiffs even after they had initiated foreclosure proceedings.

Having been lied to and lulled into believing they remained on title and that no cash would be taken out of the Home, having no papers to show to anyone or to have translated into Spanish, Plaintiffs were unable to learn the true nature of the transactions and that they had been defrauded until they had contacted attorneys at CLS months after foreclosure proceeding commenced in May of 2010. This action was filed February 1, 2012, less than two years thereafter. In these circumstances both delayed discovery and continuing violations permit Plaintiffs to assert fair housing act violations.

The fourth cause of action for Aiding and Abetting Fraud, which has a three years statute of limitations, is also subject to these discovery and tolling rules set forth above. *Wilbur v. Wilson,* 179 Cal.App.2d 314, 316 (1960). Likewise, the four year statute of limitations for sixth cause of action for financial elder abuse is subject to such an extension of the statute of limitations. Ca. Welf. & Inst. Code § 15657.7. Similarly, the statute of limitations for negligence, which is either two or three years, depending on the whether the damages are for personal injury (emotional distress) or property damage is subject to the discovery rule. *Camsi IV v. Hunter Technology Corp.,* 230 Cal.App.3d 1525, 1536 (1991). Finally, a claim for unfair business practice in violation of Business and Profession Code section 17200 is subject to the discovery rule. *Angeles Chem. Co. v. Spencer & Jones*, 44 Cal.App.4th 112, 119-120 (1996); *El Pollo Loco, Inc. v. Hashim,* C.A. 316 F.3d 1032, 1039 (9th Cir. 2003) ["the discovery rule may

OPPOSITION TO MOTION TO DISMISS
FILED BY WELLS FARGO, JP & EMC

be applied to breaches which can be, and are committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time"]; *Broberg v. The Guardian Life Ins. Co. of America*, 171 Cal.App.4th 912, 920 (2009) [denying defendant's motion to dismiss where alleged violations of Unfair Business Practice Act arose from fraudulent and unfair conduct].

Just as with the violations of the Fair Housing Acts, these other causes of action arise out of similar acts and efforts to hide the true facts of the transaction. As set forth above, Plaintiffs who are elderly, Spanish-speaking individuals only began to discover these improprieties after they learned of the foreclosure, which was less than two years before their complaint was filed. Thus, none of these causes of action are barred by the statute of limitations.

**B.**
**THE FIRST, FOURTH, SIXTH, SEVENTH AND NINTH CAUSES OF ACTION STATE CLAIMS AGAINST MOVING DEFENDANTS.**

Although Moving Defendants acknowledge that claims for vicarious liability can be based on agency, civil conspiracy, aiding and abetting, an assignee liability, they contend that that they cannot be liable for acts committed at the loan origination. Moving Defendants are mistaken. Moreover, they have unduly narrowed the focus of these causes of action to vicarious liability and ignored their own independent liability.

With regard to vicarious liability for loan origination misconduct, at this time it is unclear what relationship existed between the originator and original lender Bear Stearns who was subsequently acquired by defendant JP Morgan, because no documents have been produced regarding these relationships nor has any discovery occurred. Such documents would include the agreement between the originator and the lender and between Bear Stearns and JP Morgan when JP Morgan acquired Bear Stearns. Wells Fargo continued to aid and abet the fraud that

OPPOSITION TO MOTION TO DISMISS
FILED BY WELLS FARGO, JP & EMC

had been aided and abetted by Bear Stearns.  Wells continued to aid and abet the original fraud in the making of the subject loan when they purchased loans that they knew or should have know were fraudulently originated, took mortgage payments bearing the names of the Plaintiffs and then arbitrarily refused to continue to take these payments from the Plaintiffs.  They further aided and abetted the original loan fraud when they demanded, though their services, amounts that were not owed on the subject loan and filed notices of default and foreclosure sale without notice to the Plaintiffs who were record owners of the subject property.   As such Moving Defendants have liability as an aider and abettor.  See *Berryman v. Merit Prop. Mgmt., Inc.,* 152 Cal.App.4th 1544, 1559 (2009); *Henry v. Lehman Comm. Paper, Inc.,* 471 F.3d 971 (9th Cir. 2005).

In *Henry* the Ninth Circuit upheld a jury verdict against Lehman Brothers, Inc. and its subsidiary Lehman Commercial Paper, Inc. (collectively "Lehman") for aiding and abetting the fraud of an independent mortgage banker, First Alliance Mortgage Company ("First Alliance"). First Alliance was a lender in the subprime mortgage business.  *Id.* at 984.  First Alliance's business model was to originate subprime mortgages and then pledge them to a secondary lender under a line of credit that would be paid down when mortgages were securitized and sold to public investors.  *Id.* at 986.  Lehman provided First Alliance with a line of credit and co-managed the securitization process.  *Id.*  During this time, First Alliance was found to have engaged in fraudulently inducing borrowers into predatory loans.  *Id.* at 985.  A jury found under California law that Lehman aided and abetted First Alliance's fraud and the Ninth Circuit affirmed.  *Id.* at 993.  In so ruling the Ninth Circuit found that to be liable under California law one must be "aware that the other's conduct constitutes a breach of duty and provides substantial assistance or encouragement to the other" or stated otherwise that "an intentional participation with knowledge of the object to be obtained."  *Id.*

OPPOSITION TO MOTION TO DISMISS
FILED BY WELLS FARGO, JP & EMC

Relying on *Henry*, local federal district courts have refused to dismiss claims alleged in complaints alleging that a defendant aided and abetted those who were involved in originating fraudulent loans.  See *Plascencia v. Lending 1st Mortgage,* 583 F.Supp.2d 1090, 1099-1100 (N.D. Ca. 2008); *Marcelos v. Parada,* 2008 U.S. Dist. LEXIS 91155, *25-30 (N.D. Ca. 2008). In *Marcelos,* the allegations that the defendant knew or should have known of the fraud were deemed sufficient.  *Marcelos,* 2008 U.S. Dist. LEXIS 91155 at *25-30.  In so ruling, the court found that such claims were "better left to a motion for summary judgment.  *Id.* at *31.

Here, Moving Defendants knew or should have known from the red flags and defects in the subject loan of Plaintiffs' ownership of the Home.  The closing and escrow files provided when the loans were transferred should have contained copies of two sets of deeds, one deed taking the Plaintiffs off title to the property and one deed, post dated, restoring the Plaintiffs to ownership.  These documents provided Moving Defendants with constructive, if not actual knowledge, of the manipulations regarding title to the property.  These suspicious deeds, coupled with title reports showing that the Plaintiff's were on title from the time that the property was purchased, put Wells Fargo on notice of fraud in the instant loan.  Only discovery and a review Wells Fargo's due diligence in the transfer of this loan will clarify Wells Fargo's actions.

Moving Defendants argue that they cannot be liable under principles of successor liability, citing *Fisher v. Allis-Chalmers Corp.* 95 Cal.App.4th 1182 (2002).  *Fisher* is not applicable as it arose out of a claim for tort liability for personal injury against that a successor manufacturer for a product made by its predecessor.  It did not involve, as here, claims arising out of a contract relating to a loan.  Moreover, successor liability depends on the terms of the transfer agreement.  *Id.* at 1192.  Where the agreement has not been produced or is ambiguous it would be inappropriate to grant a motion to dismiss.  See *Id.* 1192-1193 [motion for summary

OPPOSITION TO MOTION TO DISMISS
FILED BY WELLS FARGO, JP & EMC

judgment reversed because transfer agreement not clear].

Furthermore, there is evidence that Bear Stearns was complicit in the origination of such fraudulent loans.  See Plaintiff's Request for Judicial Notice, Exhibits 4 and 5.  Under these conditions, Plaintiffs have alleged sufficient facts, without the benefit of discovery, to pursue such claims of vicarious liability.

Apart from the foregoing, however, Plaintiffs contend that their liability is not based solely on acts that occurred at origination, but from information Bear Stearns provided to its loan originators regarding the type of loans it was seeking and its approval process and the post origination misconduct of the Moving Defendants in failing to discover the fraud despite the red flags related to deeds signed on the same day, apparently a month prior to the loan closing, showing transfer back and forth yet Moving Defendants failed to notify Plaintiffs and then attempting to proceed with a foreclosure action on the Home.

In the case at bar, it may be reasonably assumed that there are agreements between the defendants defining their respective rights and obligations, however, these rights and obligations remain a mystery, as the agreements have not been produced.  Under these circumstances, Defendant cannot take advantage of this lack of discovery to assert, as a matter of law, that they have no liability.  Where the pertinent information is solely within the possession of the Moving Defendants, Plaintiffs have alleged sufficient facts to proceed against these Moving Defendants on the First, Fourth, Sixth, Seventh and Ninth Causes of Action so as to allow them the opportunity for further discovery.

## C.
### PLAINTIFFS HAVE STATED A CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200

Section 17200 of the California business and Professions Code creates a cause of action for an "unlawful, unfair or fraudulent business practice."  Any single unlawful, unfair or

OPPOSITION TO MOTION TO DISMISS
FILED BY WELLS FARGO, JP & EMC

fraudulent act or practice constitutes an unfair business act or practice under Business and Profession Code section 17200 and 17500.  *Morgan v. AT&T Wireless, Inc.,* 177 Cal.App.4th 1235, 1254 (2009).  The breadth of unfair business practices under section 17200 is "broad" and its coverage "sweeping."  *Cel-Tech Communications v. L.A. Cellular,* 20 Cal. 4th 163, 180 (1999).  It includes any act that is either unlawful, unfair or fraudulent.  *Pastoria v. Nationwide Ins.,* 112 Cal.App.4th 1490, 1496 (2003).  The section "prohibits wrongful business conduct in whatever context such activity might occur;" the standards are intentionally broad and allows courts maximum discretion to prohibit new schemes to defraud.  *Searle v. Wyndham International, Inc.,* 102 Cal. App. 4th 1327, 1333-1334 (2002).  "Whether any particular conduct is an unfair business practice is a question of fact dependent on the circumstances of each case."  *People v. E.W.A.P., Inc.,* 106 Cal. App. 3d 315, 320-321 (1980).  A deceptive business practice under the state deceptive business practices statutes does not require a showing that anyone was actually deceived, relied on a fraudulent practice, or sustained any damage.  *Byars v. SLME Mortgage Brokers, Inc.,* 109 Cal. App. 4th 1134, 1147 (2003).

An act is unlawful if it violates any federal, state or local law.  *Inline Inc. v. A.V.L. Holding Co.,* 125 Cal.App.4th 895, 902 (2005).  Second, the unfairness prong is intentionally broad so as to allow courts maximum discretion to prohibit new schemes to defraud.  *Podolksy v. First Healthcare Corp.,* 50 Cal.App.4th 632, 647 (1996).  It sweeps within its scope and practices not specifically proscribed by any other law.  *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 949 (2002).  Finally, the fraud prong has little resemblance to common law fraud.  *People v. Fremont Life Ins. Co.,* 104 Cal.App.4th 508, 519 (2002).  An act is fraudulent if members of the public are likely to be deceived.  *Comm. on Children's Tel. v. General Foods Corp.,* 35 Cal.3d 197, 211 (1983).

While in the past an action for unfair business practices could have been brought by any

OPPOSITION TO MOTION TO DISMISS
FILED BY WELLS FARGO, JP & EMC

person, even if that person has suffered no injury, now plaintiff must be harmed.  Ca. Bus. &

Prof. Code §§ 17203-17204.  Claims based on illegality or unfairness do not require reliance.

*Dorell v. Sharp Healthcare,* 183 Cal.App.4th 1350, 1364 (2010).  To have standing a plaintiff

must sufficiently allege that (1) he has lost money or property sufficient to constitute an injury

in fact and (2) there is a causal connection between the defendant's alleged violation and the

plaintiff's injury in fact.  *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-1204 (9th Cir.

2010).  Contrary to Moving Defendants no pattern or practice need be shown.  *Klein v. Earth*

*Elements*, 59 Cal. App. 4th 965, 969 (1997).

Here, the Plaintiffs have suffered concrete and actual injury as they are at risk of losing

their Home.  Plaintiffs' complaint sets forth specific fraudulent, illegal and/or unfair acts in

which defendants engaged.  Denying defaulting borrowers the benefit of procedures to prevent

foreclosure constitute an unfair business practice.  *Biggins v. Wells Fargo & Co.*, 266 F.R.D.

399, 413 (N.D. Cal. 2009).  In particular, section 2923.5 of the California Civil Code requires

that prior to the institution of foreclosure proceedings, lenders refer borrowers to a HUD-

certified housing counselors and the failure to do so requires delay of the foreclosure

proceedings so that borrowers may be able to take steps to save their homes and obtain loan

modification through the federal HAMP program and other programs.  *Mabry v. Superior*

*Court,* 185 Cal.App.4th 208, 222-23 (2010).  Moving Defendants also participated in a

fraudulent scheme, relied on fraudulent documents and failed to afford Plaintiffs the rights of a

borrower post-origination.  Each of these acts constitute unfair practices.

### D.
### PLAINTIFFS' HAVE A VALID CLAIM FOR WRONGFUL FORECLOSURE.

Before a foreclosure can take place in California, a lender is required to contact the

borrowers to explain options for the borrower to avoid foreclosure.  Ca. Civ. Code § 2923.5(a)-

OPPOSITION TO MOTION TO DISMISS
FILED BY WELLS FARGO, JP & EMC

(c).   Here, Moving Defendants acknowledge that neither Plaintiff nor any borrower was contacted despite the fact that Plaintiffs resided in the Home, made payments and were on title to the Home.  See Exhibit C to Moving Defendants' Request for Judicial Notice.  This failure to contact prior to initiating foreclosure gives rise to a private cause of action.  (*Magdaleno v. Indymac Bancorp., Inc*. U.S. Dist. LEXIS 13561 (E.D. Ca. 2011).  Moreover, failure to do so prevents the foreclosure proceedings from going forward.  *Mabry v. Superior Court,* 185 Cal.App.4th 208, 225.

Apart from the foregoing, a copy of the notice of default must be mailed within one month to any person holding an interest of record in the property who will be affected by the foreclosure, including successor owners.  Ca. Civ. Code § 28246(c).  None of the documents attached to Moving Defendants Request for Judicial Notice reflect that Plaintiffs, or anyone else, was served with such notices.  Thus Plaintiffs can state a cause of action for wrongful foreclosure.

**E.**
**PLAINTIFFS HAVE STATED A CAUSE OF ACTION FOR NEGLIGENCE.**

Generally, in California, a financial institution owes no duty of care to a borrower to whom it merely lends money.  *Saldate v. Wilshire Credit Corp.*, 686 F. Supp. 2d 1051, 1061-62 (E.D. Cal. 2010); *Wagner v. Benson*, 101 Cal. App. 3d 27, 35 (1980) ["Liability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender"].  There is an exception, however, when the institution is "actively careless" in causing harm to the plaintiff.  *Saldate*, 686 F. Supp. 2d at 1062; see also *Newsome v. Country wide Home Loans, Inc.* 2010 U.S. Dist. LEXIS 12683 *15 (N.D. Ca. 2010) [no sweeping rule of lender's lack of duty to borrower]; *Oholini v. Bank of America*, 2011 U.S. Dist LEXIS 92900 *16 (N.D. Ca. 2011) [lender can be liable for

negligence in handling loan transactions.]

In fact, the Ninth Circuit has recognized the need to apply the six factor test to the determine the existence of duty set forth in the recent case *Jolley v. Chase Home Finance, LLC,* 213 Cal.App.4th 872, 898-906 (2013). *Yao v. Deutsche Bank Nat'l Trust Co. Ams.*, 525 Fed. App x 606, 609 (9th Cir. 2013). These factors, which are not exhaustive, are (1) the extent to which the transaction was intended to affect the plaintiff, (2) the forseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future injury. *Jolley,* 213 Cal.App.4th at 898.

Plaintiffs can satisfy each of these six factors. Moving Defendants knew that they were dealing with Plaintiffs who had lived in the Home and then refused to deal with them. Moving Defendants knew that it was foreseeable if not certain that Plaintiffs would be damaged as a result of default and foreclosure and that their failure to deal with Plaintiffs would cause injury. As noted below, Moving Defendants should have known of Plaintiffs' interest in the Home. Finally, Moving Defendants were in a position to prevent this harm, particularly when they acquired the loans from others. In fact, it is well known that each of the Moving Defendants were aware of and contributed to the problems associated with the securitization of predatory loans that contributed to the foreclosure.

Here, although Moving Defendants acted in their capacities as financial institutions, Plaintiffs allege they were actively careless and negligent as a result of intentionally and knowingly ignoring the fact that Plaintiffs were owners of the Home and that funding and thereafter servicing the subject loan was made contrary to Plaintiffs' right in the Home. Taking these facts of knowledge to be true, plaintiff has made a threshold showing of carelessness by

OPPOSITION TO MOTION TO DISMISS
FILED BY WELLS FARGO, JP & EMC

1   Moving Defendants in carelessly soliciting and funding the fraudulent loan at issue and

2   thereafter carelessly servicing the loan and initiating foreclosure proceedings when they knew

3   or should have known of Plaintiffs' interest in the Home.   See *Central Construction Co. v.*

4   *Hartman,* 7 Cal.2d 703, 709 (1935) [conclusive presumption of notice of deed on the public

5   record]; *Claremont Terrance Homeowners' Ass'n. v. U.S.,* 146 Cal.App.3d 398, 408 (1983)

6   [possession as constructive notice of ownership].   Therefore, Plaintiffs have stated a claim for

7

8   negligence against Moving Defendants.

9                                                    **F.**
                       **PLAINTIFFS HAVE STATED A CAUSE OF ACTION TO QUIET TITLE.**
10

11           Plaintiffs have stated a cause of action for quiet title.   Contrary to Moving Defendants

12   Plaintiffs have shown title to the Home superior to that of Moving Defendants' in that they

13   owned the Home prior to the subject loan and were fraudulently induced to sign a quit claim

14   deed on the same day that a quit deed was signed transferring the interest in the Home back to

15   them.   Second, in quiet title actions, although California a plaintiff need not prove an ability to

16   tender, generally a plaintiff must aver one.   *Lee v U.S. Bank*, U.S. Dist. LEXIS 66182 (N.D. Cal.
17
18   2010)   There are four exceptions to this rule.   *Lona v. Citibank, N.A.*, 702 Cal.App 4th 89, 112

19   (2011).   The first exception applies when the borrower challenges the validity of the underlying

20   debt, the second when the person seeking to set aside the trustee's sale has a counter-claim or

21   set-off against the beneficiary, the third when it would inequitable to impose such a condition on

22   the party challenging the sale, and the fourth when the deed is void on its face.   *Id*. at 112-13.

23
24   Contrary to Moving Defendants the second element of Plaintiffs' quiet title claim, the basis of

25   Plaintiffs' title has been satisfied.

26                                                    **G.**
     **PLAINTIFFS HAVE STATED A CAUSE OF ACTION FOR DECLARATORY RELIEF**

27

28           As Plaintiffs have set forth various claims as to their rights as owners of the Home, and

OPPOSITION TO MOTION TO DISMISS
                                                     FILED BY WELLS FARGO, JP & EMC

Moving Defendants have refused to recognize these rights, disputes exist that must be resolved regarding the respective rights and obligations of Moving Defendants and Plaintiffs with respect to the subject loan, the Home and the pending foreclosure proceeding.

**CONCLUSION**

Thus, contrary to Moving Defendants' contentions, Plaintiffs' complaint has alleged valid causes of action against them.  Therefore, Moving Defendants' motion to dismiss must be denied.  In the event that the Court decides that their motion has merit, Plaintiffs request leave to amend.

Dated:  January 13, 2014              LAW OFFICES OF ROBERT KANE
                                      COMMUNITY LEGAL SERVICES IN EAST PALO ALTO

                                      BY:  _s/Robert F. Kane_____
                                           ROBERT F. KANE
                                           ATTORNEY FOR PLAINTIFFS
                                           ANTONIO ROSALES AND CARMEN ROSALES

OPPOSITION TO MOTION TO DISMISS
FILED BY WELLS FARGO, JP & EMC