United States District Court
For the Northern District of California

1

2

3

4

5    IN THE UNITED STATES DISTRICT COURT

6    FOR THE NORTHERN DISTRICT OF CALIFORNIA

7    SAN JOSE DIVISION

8

9    CARMEN ROSALES, et al.,                    Case No.  13-cv-01316-BLF

         Plaintiffs,
10

11       v.                                      ORDER GRANTING MOTIONS TO
                                                 DISMISS WITH LEAVE TO AMEND
     WELLS FARGO BANK, N.A., et al.,
12   Defendants.                                 [Re:  ECF 25, 29]

13

14       This lawsuit follows a series of irregular transactions regarding a home located at 1837 Drew

15   Avenue in Mountain View, California ("the Home").  Plaintiffs Antonio Rosales ("Antonio") (now

16   deceased) and his wife Carmen Rosales ("Carmen")[1] filed this action as an adversary proceeding in

17   the Bankruptcy Court for the Northern District of California.  Plaintiffs had filed for bankruptcy in

18   an effort to save the Home from foreclosure.  Following withdrawal of the bankruptcy reference,

19   Plaintiffs filed the operative second amended complaint ("SAC")[2] in this Court on November 18,

20   2013, asserting state and federal claims against a number of individuals and entities who allegedly

21   defrauded Plaintiffs of their equity in the Home.

22       Two sets of Defendants separately move for dismissal of the SAC under Federal Rule of

23   Civil Procedure 12(b)(6):  (1) North American Title Company ("NATC") and (2) Wells Fargo Bank,

24

25   [1] The Court refers to members of the Rosales family by their first names for the sake of clarity.  The
     Court means no disrespect by this informality.

26
     [2] Although Plaintiffs have titled the operative pleading "Amended Complaint," it appears from the
27   record that Plaintiffs filed a complaint and an amended complaint in the Bankruptcy Court, and then
     filed the present amended complaint in this Court, rendering it the second amended complaint
28   overall.

United States District Court

For the Northern District of California

1    N.A., as trustee for the Certificateholders of Structured Asset Mortgage Investments II Inc., Bear

2    Stearns Mortgage Funding Trust 2006-AR-3, Mortgage Pass-Through Certificates, Series 2006-AR3

3    ("Wells Fargo"); JPMorgan Chase Bank, N.A. ("JPMorgan"); and EMC Mortgage, LLC ("EMC").

4    The Court has considered the parties' briefing as well as the oral argument presented at the hearing

5    on July 10, 2014.  For the reasons discussed below, both motions are GRANTED with leave to

6    amend.

7    **I.    BACKGROUND**[3]

8         Plaintiffs Antonio and Carmen were born in Mexico and subsequently became permanent

9    residents of the United States.  They never became fluent or literate in English.  In 1994, Plaintiffs

10   wished to buy the Home, but their real estate agent told them that they would not qualify for a loan.

11   Plaintiffs transferred the down payment to their oldest daughter, Socorro Rosales ("Socorro");

12   Socorro and her husband, Brigido Avila ("Brigido"), purchased the home using the down payment

13   provided by Plaintiffs.  Plaintiffs, Socorro, and Brigido took up residence in the Home.

14        In September 2000, Socorro and Brigido moved out of the Home.  Title was transferred to

15   Plaintiffs jointly with their son, Salvador Rosales ("Salvador") (now deceased).  Salvador's wife,

16   Vicky, later was added to the title.  Thereafter, Salvador and Vicky resided in the Home with

17   Plaintiffs.  In 2002, at Salvador's request, Plaintiffs refinanced the Home and gave the cash proceeds

18   of the refinance to Salvador.

19        "Beginning in 2004, and thereafter, Carmen was the subject of a conservatorship for the

20   gravely disabled with the Santa Clara Public Guardian serving as her conservator and lacked

21   capacity to sign any documents."  SAC ¶ 39.

22        In 2006, Salvador told Plaintiffs that he had arranged for a refinance that would reduce the

23   interest rate on the Home loan and reduce the monthly mortgage payments.  On July 15, 2006,

24   Salvador and Vicky took Plaintiffs to the office of Defendant Mortgagepointer.com, Inc.

25   ("Mortgagepointer"), a mortgage broker.  Plaintiffs signed a number of documents that were in

26   English and were not translated into Spanish, including a grant deed that conveyed title to the Home

27   _____

28   [3] The background facts are drawn from the allegations of the SAC, which are accepted as true for
     pleading purposes, and from judicially noticeable documents submitted by the parties in conjunction
     with requests for judicial notice.  Those requests are addressed below in section III.A.

United States District Court
For the Northern District of California

1   to Salvador and Vicky as joint tenants.  Plaintiffs claim that they did not understand that they were

2   signing away title to the Home.  Salvador and Vicky also signed documents, including a grant deed

3   that reconveyed title to the Home to Plaintiffs, Salvador, and Vicky as tenants in common.  Both

4   grant deeds were signed and notarized by Alisha Carroll ("Carroll") on July 15, 2006 but, as

5   discussed below, they were recorded on different dates.  Carroll was "employed and/or hired and

6   paid" by NATC, the escrow agent.

7           NATC recorded the first grant deed (conveying title to Salvador and Vicky) on August 17,

8   2006.  On the same date, a Deed of Trust dated August 10, 2006 was recorded, reflecting that

9   Salvador and Vicky had taken a loan against the Home in the amount of $340,000 ("Deed of

10  Trust").  The Deed of Trust named Bear Stearns Residential Mortgage Corporation ("Bear Sterns")

11  as the lender; Mortgage Electronic Registration System ("MERS"), acting as a nominee for Bear

12  Stearns, as the beneficiary; and NATC as the trustee.  EMC serviced the loan.  NATC recorded the

13  second grant deed (reconveying title to Plaintiffs, Salvador, and Vicky) on August 29, 2006.

14          As part of the loan transaction, Salvador and Vicky received cash proceeds in excess of

15  $135,000.  Plaintiffs claim that they had no idea that they were removed from the title to the Home,

16  that Salvador and Vicky had taken a loan against the property in their own names, that the amount

17  of indebtedness against the Home had increased, or that Salvador and Vicky had pulled equity out of

18  the Home.  As had been his practice, Antonio continued giving Salvador cash to make the mortgage

19  payments.  There are no allegations indicating to whom Salvador made the payments or the amounts

20  that he paid.

21          On a date not disclosed in the SAC, Vicky moved out of the Home and filed for divorce

22  from Salvador.  On November 27, 2008, Salvador died suddenly at the age of thirty-four.

23  Thereafter, Antonio began making loan payments directly to the servicer, EMC, which was when he

24  learned that Plaintiffs were not named on the loan.  EMC nonetheless accepted Antonio's payments.

25  While not clear from the SAC, it appears that Antonio's payments were not enough to cover the

26  monthly loan amount due; it may be that the monthly loan payment had increased a result of the

27  loan entered into by Salvador and Vicky.  Vicky did not make loan payments after Salvador died

28  and the loan went into default even though Antonio was making monthly payments.  A Notice of

**United States District Court**
For the Northern District of California

1   Default and Election to Sell under Deed of Trust was filed in the office of the Santa Clara County

2   Recorder on May 21, 2010.  Vicky filed for bankruptcy in July 2010.

3        On July 10, 2010, MERS assigned its rights as beneficiary under the Deed of Trust to Wells

4   Fargo.  On August 2, 2010, Wells Fargo substituted NDEx West, LLC ("NDEx West") as trustee

5   under the Deed of Trust in place of NATC.  In November 2010, EMC, the loan servicer, stopped

6   accepting Antonio's monthly payment, stating that only Salvador and Vicky were borrowers on the

7   loan and that Plaintiffs' payments would not be accepted.  On November 16, 2010, NDEx West

8   recorded a Notice of Trustee's Sale, reciting an unpaid loan balance of $411,688.74.  Plaintiffs

9   consulted with Community Legal Services in East Palo Alto ("CLS") and only then did they learn

10  the full extent of the 2006 transactions.  Plaintiffs sought modification of the loan, which request

11  was denied on the ground that Plaintiffs were not parties to the loan.

12       In March 2011, Plaintiffs filed for bankruptcy.  Wells Fargo filed a secured claim in the

13  amount of $418,885.35, which was the outstanding loan balance including arrears in the amount of

14  $36,831.55.  On February 1, 2012, Plaintiffs filed the present action as an adversary proceeding in

15  the bankruptcy.  The operative SAC, filed in this Court after withdrawal of the bankruptcy

16  reference, asserts claims against Vicky; Mortgagepointer and its principals, Jagdeep Kapoor and

17  Rana Saluja; NATC, which was the escrow agent on the 2006 loan and the original trustee under the

18  Deed of Trust; JPMorgan as successor to the lender, Bear Stearns; EMC, the loan servicer; Wells

19  Fargo, which became the beneficiary under the Deed of Trust in July 2010; Carroll, the notary who

20  notarized the two July 15, 2006 grant deeds; and the Estate of Salvador Rosales.

21       Plaintiffs allege claims for:  (1) violation of the Fair Housing Act ("FHA"),[4] 42 U.S.C. §

22  3605(a); (2) violation of California Civil Code § 1632; (3) fraud; (4) aiding and abetting fraud; (5)

23  financial elder abuse under California Welfare & Institutions Code § 15600; (6) aiding and abetting

24  elder financial abuse; (7) unfair business practices under California Business & Professions Code §

25  17200; (8) wrongful foreclosure; (9) negligence; (10) quiet title; and (11) declarative relief.

26

27  _____

28  [4] Plaintiffs' briefing confusingly refers to Claim 1 as asserting violations of "the federal and state Fair Housing Acts ('FHA' [federal] 'FEHA' [state])."  Opp. at 7, ECF 37.  Claim 1 does not allege a violation of FEHA; in fact, FEHA is not mentioned in the SAC at all.

**United States District Court**
For the Northern District of California

1    **II.    LEGAL STANDARDS**

2        **A.    Rule 12(b)(6)**

3        "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

4    claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force*

5    *v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732

6    (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all

7    well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v.*

8    *BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not

9    "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations

10   that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re*

11   *Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations

12   omitted).  While a complaint need not contain detailed factual allegations, it "must contain sufficient

13   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

14   *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A

15   claim is facially plausible when it "allows the court to draw the reasonable inference that the

16   defendant is liable for the misconduct alleged." *Id.*

17       **B.    Rule 9(b)**

18       In addition to the pleading requirements set forth above, a plaintiff who alleges fraud must

19   satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *Kearns v. Ford*

20   *Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b) requires that "a party must state with

21   particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  "'Averments of fraud must

22   be accompanied by the who, what, when, where, and how of the misconduct charged.'" *Kearns*,

23   567 F.3d at 1124 (quoting *Yess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

24   **III.   DISCUSSION**

25       **A.    Judicial Notice**

26       Wells Fargo, JPMorgan, and EMC request judicial notice of six documents relating to the

27   Home that were recorded in the Santa Clara County Recorder's Office:  a Deed of Trust, a Deed of

28   Release, a Notice of Default, an Assignment of Deed of Trust, a Substitution of Trustee, and a

5

United States District Court
For the Northern District of California

1   Notice of Trustee's Sale.  Wells Fargo's RJN, ECF 30.  Wells Fargo's request is GRANTED.  *See*

2   *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (court may take judicial notice of

3   matters of public record).

4        NATC requests judicial notice of seven documents relating to the Home that were recorded

5   in the Santa Clara County Recorder's Office:  a grant deed from the year 1994, a grant deed from

6   the year 2000, a grant deed from the year 2002, both July 15, 2006 grant deeds, a Deed of Trust, and

7   an Assignment of the Deed of Trust.  NATC's RNJ, ECF 26.  NATC also requests judicial notice of

8   the Bankruptcy Court's dismissal of Plaintiffs' original adversary complaint in this action.  *Id.*

9   NATC's request is GRANTED.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746

10  n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public

11  record."); *Mir*, 844 F.2d at 649 (court may take judicial notice of matters of public record).

12       Plaintiffs request judicial notice of letters of administration filed in the Santa Clara County

13  Superior Court with respect to the Antonio's estate and both of the July 15, 2006 grant deeds.  Pls.'

14  RJN, ECF 39.  The request is GRANTED with respect to those documents.  *See Reyn's Pasta Bella*,

15  442 F.3d at 746 n.6 ("We may take judicial notice of court filings and other matters of public

16  record."); *Mir*, 844 F.2d at 649 (court may take judicial notice of matters of public record).

17       Plaintiffs also request judicial notice of two newspaper articles about Bear Stearns, a

18  transcript of testimony before the Financial Crisis Inquiry Commission, and a December 2011 press

19  release from the Department of Justice.  Pls.' RJN, ECF 39.  Plaintiffs' request is DENIED with

20  respect to those documents, as they do not contain facts that "can be accurately and readily

21  determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

22       **B.**     **Global Pleading Defects**

23       Before turning to the arguments specific to each set of moving Defendants, the Court

24  addresses some global pleading defects.

25            **1.**     **Capacity to Sue**

26       The two named Plaintiffs in this action are Antonio, a deceased individual, and Carmen, who

27  is alleged to have been incompetent since 2004.  Accordingly, it appears on the face of the SAC that

28  no named Plaintiff has capacity to maintain this suit.  *See* Fed. R. Civ. P. 17(c) (listing persons who

**United States District Court**
For the Northern District of California

1    may bring suit on behalf of an incompetent individual); 25(a) (describing procedure for substituting

2    a successor or representative when a party dies).  When questioned at the hearing, Plaintiffs' counsel

3    indicated that these defects could be cured by substituting Antonio's estate for Antonio and adding

4    allegations that Carmen no longer is under a conservatorship.  Plaintiffs are granted leave to cure the

5    defects in the manner suggested.

6                              **2.        Statutes of Limitations**

7            Many of Plaintiffs' claims are based upon acts that occurred in July and August 2006, when

8    the two grant deeds were signed and the loan currently encumbering the property was obtained by

9    Salvador and Vicky.  Plaintiffs did not file suit until more than five years later when they

10   commenced the adversary proceeding against Defendants on February 1, 2012.  Thus it appears on

11   the face of the SAC that the following claims are time-barred:  Claim 1 for violation of the FHA,

12   which is subject to a two-year statute of limitations, *see* 42 U.S.C. § 3613(a)(1)(A); Claim 4 for

13   aiding and abetting fraud, which is subject to a three-year statute of limitations, *see* Cal. Civ. P.

14   Code § 338(d); Claim 6 for aiding and abetting financial elder abuse, which is subject to a four-year

15   statute of limitations, *see* Cal. Welf. & Inst. Code § 15657.7; Claim 7 for unfair business practices,

16   which is subject to a four-year statute of limitations, *see* Cal. Bus. & Prof. Code § 17208; and Claim

17   9 for negligence, which is subject to a two-year statute of limitations, *see* Cal. Civ. P. Code § 335.1.

18           Plaintiffs argue that the discovery rule applies such that the claims are not time-barred.

19   Under the discovery rule, accrual is delayed until the plaintiff has "discovered" his claim.  *Gabelli v.*

20   *SEC*, 133 S. Ct. 1216, 1221 (2013).  "[T]he general federal rule is that a limitations period begins to

21   run when the plaintiff knows or has reason to know of the injury which is the basis of the action."

22   *Mangum v. Action Collection Service, Inc.*, 575 F.3d 935, 940 (9th Cir. 2009) (internal quotation

23   marks and citation omitted).  In California, "under the delayed discovery rule, a cause of action

24   accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury

25   and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at

26   that time would not have revealed a factual basis for that particular cause of action." *Fox v. Ethicon*

27   *Endo-Surgery, Inc.*, 35 Cal. 4th 797, 802 (2005).

28           The SAC contains two allegations that arguably are relevant to application of the discovery

United States District Court

For the Northern District of California

1 rule.  First, Plaintiffs allege that they discovered that they were not listed as borrowers on the loan

2 only after Antonio began making loan payments directly to EMC following Salvador's death.  SAC

3 ¶ 49.  Plaintiffs do not allege the date of that "discovery."  *Id.*  Plaintiffs also do not allege facts

4 showing that the circumstances of the loan origination were not sufficient to put them on notice of

5 irregularities.  Plaintiffs allege that the documents they signed were in English and that no Spanish

6 translation or interpreter was provided; that "Antonio heard talk about additional moneys being paid

7 from the Loan"; and that a representative of Mortgagepointers told Antonio that as a result of the

8 refinance approximately $140,000 would be paid to Salvador and Vicky, who would be the only

9 names on the title.  SAC ¶ 41.  Plaintiffs allege that everyone present appeared to acquiesce when

10 Antonio stated that Plaintiffs were to stay on the loan and that no additional indebtedness was

11 acceptable, but it seems that in the exercise of due diligence Plaintiffs were on inquiry notice that

12 Salvador and Vicky might be pulling equity out of the Home.  Even if the Court were to assume that

13 Plaintiffs have alleged facts showing that their claims did not accrue until the communication from

14 EMC after Salavador's death, Plaintiffs waited more than three years before they commenced the

15 adversary proceeding.  Consequently, a number of their claims still would be time-barred.

16 Second, Plaintiffs allege that, "Plaintiffs were unable to understand what had transpired with

17 the loans on the Home and sought assistance from Community Legal Services in East Palo Alto

18 ('CLS') and, after consulting with a Spanish speaking attorney learned, for the first time, the full

19 extent of the fraud that had been perpetrated against them and the jeopardy to their Home."  SAC ¶

20 52.  Plaintiffs do not allege the date of that "discovery."  Moreover, the allegation of the later

21 discovery is implausible given Plaintiffs' allegations regarding the circumstances of the 2006

22 refinance, and the later communication with EMC, which on this record appear to be sufficient to

23 put any reasonable person on notice.

24 Accordingly, Claims 1, 4, 6, 7, and 9 are DISMISSED with leave to amend on the ground

25 that they appear to be time-barred on the face of the SAC.

26 **C.     Motion to Dismiss brought by Wells Fargo, JPMorgan, and EMC**

27 Defendants Wells Fargo, JPMorgan, and EMC are named as defendants to:  Claim 1 for

28 violation of the FHA (JPMorgan), Claim 4 for aiding and abetting fraud (JPMorgan), Claim 6 for

1    aiding and abetting financial elder abuse (JPMorgan), Claim 7 for unfair business practices (Wells

2    Fargo, JPMorgan, and EMC), Claim 8 for wrongful foreclosure (Wells Fargo and EMC), Claim 9

3    for negligence (Wells Fargo, JPMorgan, and EMC), Claim 10 for quiet title (Wells Fargo,

4    JPMorgan, and EMC), and Claim 11 for declaratory relief (Wells Fargo, JPMorgan, and EMC).

5         As discussed above, Claims 1, 4, 6, 7, and 9 are subject to dismissal as time-barred.  In

6    addition, those claims fail to allege facts giving rise to relief because they arise from acts that

7    occurred at the time of the loan origination in July and August 2006.  Wells Fargo, JPMorgan, and

8    EMC are not alleged to have been present at, or involved in, the loan origination.

9         To the extent that Plaintiffs assert that Defendants conspired with third parties who were

10   present at loan origination, their allegations are wholly conclusory and thus insufficient.  *See*

11   *Twombly*, 550 U.S. at 557 (holding that, in the context of an antitrust action, "a conclusory

12   allegation of agreement at some unidentified point does not supply facts adequate to show

13   illegality").

14        Plaintiffs' aiding and abetting allegations against JPMorgan similarly are deficient.  "In

15   California, a party "aids and abets the commission of an intentional tort if the person (a) knows the

16   other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the

17   other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and

18   the person's own conduct, separately considered, constitutes a breach of duty to the third person."

19   *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 882 (N.D. Cal. 2010) (internal

20   quotation marks and citation omitted).  Plaintiffs have not alleged any facts establishing that

21   JPMorgan gave substantial assistance or encouragement to the third parties that were involved in the

22   loan origination.  Moreover, to the extent that Plaintiffs allege that JPMorgan aided and abetted a

23   fraud, they have not met the heightened pleading standard of Rule 9(b).

24        Insofar as Plaintiffs seek to hold Wells Fargo or JPMorgan liable as assignees or successors

25   to MERS (the original beneficiary under the trust) or Bear Stearns (the original lender), such

26   liability normally does not lie under California law.  *See Fisher v. Allis-Chalmers Corp. Prod.*

27   *Liability Trust*, 95 Cal. App. 4th 1182, 1188 (2002).  Exceptions exist if:  "(1) there is an express or

28   implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the

United States District Court
For the Northern District of California

9

United States District Court

For the Northern District of California

1  two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the

2  transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's

3  debts." *Id.* Plaintiffs have not alleged any facts regarding the relationships between Wells Fargo

4  and MERS, or JPMorgan and Bear Stearns, that would trigger application of one of these exceptions

5  in this case.

6         In their opposition brief, Plaintiffs suggest that Defendants are liable because "when they

7  purchased the loans" "they knew or should have known" that the loans were fraudulently originated.

8  Opp. at 12, ECF 37.  This argument is somewhat confusing because it refers to multiple loans when

9  only one loan is at issue here, and because the SAC does not allege that Wells Fargo, JPMorgan, or

10 EMC "purchased" the loan in question.  Plaintiffs do not cite any authority that would support

11 imposition of liability against Wells Fargo, a successor beneficiary under the Deed of Trust,

12 JPMorgan, a successor in interest to the lender, or EMC, the loan servicer, on these facts.  Plaintiffs

13 instead rely upon a number of cases in which lenders were alleged to have schemed with mortgage

14 brokers to induce borrowers to enter into predatory loans.  While Plaintiffs perhaps could assert

15 such a theory against Bear Stearns, the lender at the time of loan origination, the theory does not

16 give rise to liability against Wells Fargo, JPMorgan, or EMC, entities that were not involved in the

17 loan origination.

18        Claims 8, 10, and 11 do not arise out of acts that occurred at loan origination; however, those

19 claims fail for other reasons.  Claim 8, for wrongful foreclosure, is premature because no foreclosure

20 sale has taken place.  *See Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 961 (N.D.

21 Cal. 2010) (under California law, a claim for wrongful foreclosure is premature if no foreclosure

22 sale has taken place).

23        Claim 10, for quiet title, fails because Plaintiffs have not alleged facts showing that they

24 have title superior to that of Defendants.  Under California law, a claim to quiet title must include:

25 "(1) a description of the property in question; (2) the basis for plaintiff's title; and (3) the adverse

26 claims to plaintiff's title."  *Kelley Mortg. Elec. Reg. Sys., Inc.*, 642 F. Supp. 2d 1048, 1057 (N.D.

27 Cal. 2009).  Plaintiffs seem to believe that they have superior title to the Home because their son

28 and daughter-in-law duped them, encumbered the property, stripped its equity, and concealed their

10

**United States District Court**
For the Northern District of California

1    actions.  Plaintiffs ignore the fact that Defendants Wells Fargo and JPMorgan came into the picture

2    *several years after* these events and – based upon recorded documents that are subject to judicial

3    notice – at that time acquired security interests in the Home.  Plaintiffs have not cited any authority

4    suggesting that those security interests would be impaired even if all of Plaintiffs' allegations about

5    loan origination are true.  EMC, the loan servicer, is not alleged to be asserting title to the Home.

6           Finally, Claim 11, for declaratory relief, fails because Plaintiffs have not alleged any viable

7    claim demonstrating the existence of an actual controversy.

8           Accordingly, the motion to dismiss brought by Wells Fargo, JPMorgan, and EMC is

9    GRANTED with leave to amend.

10                   **D.        Motion to Dismiss brought by NATC**

11          NATC is named as a defendant to Claim 4 for aiding and abetting fraud, Claim 6 for aiding

12   and abetting financial elder abuse, Claim 7 for unfair business practices, Claim 9 for negligence, and

13   Claim 11 for declaratory relief.[5]  As discussed above, Claims 4, 6, 7, and 9 appear to be time-barred.

14   However, even if that were not the case, Plaintiffs have failed to state a claim against NATC.

15          NATC was the escrow agent on the loan obtained by Salvador and Vicky, and the original

16   trustee under the Deed of Trust.  Theoretically, Plaintiffs' claims against NATC should be stronger

17   than those against Wells Fargo, JPMorgan, and EMC, because NATC actually participated in the

18   loan transaction giving rise to Plaintiffs' claims.  However, Plaintiffs' theory of liability against

19   NATC is unclear.  Generally, "[a]n escrow holder is an agent and fiduciary of the parties to the

20   escrow."  *Summit Fin. Holdings, Ltd. v. Continental Lawyers Title Co.*, 27 Cal. 4th 705, 711 (2002).

21   "The agency created by the escrow is limited – limited to the obligation of the escrow holder to

22   carry out the instructions of each of the parties to the escrow."  *Id.*  Because Plaintiffs were not

23   parties to the loan, it is not apparent that NATC owed Plaintiffs any type of duty, fiduciary or

24   otherwise.

25          The Court understands Plaintiffs to be asserting that NATC was an active participant in a

26

27   [5] In addition to the claims listed above, NATC also briefed Claim 10, seeking to quiet title.  The
     caption of Claim 10 states that it is asserted "As to all Defendants except MP, Kapoor, Saluja, and
28   North American."  Because Claim 10 is not asserted against NATC, it is not addressed in this
     portion of the order.

**United States District Court**
For the Northern District of California

1    scheme to defraud Plaintiffs.  Plaintiffs allege that Carroll, who was "employed and/or hired and

2    paid" by NATC, notarized Plaintiffs' signatures on the July 15, 2006 English language grant deed

3    conveying the Home to Salvador and Vicky despite knowing that Plaintiffs did not read or

4    understand English.  SAC ¶ 21.  NATC thereafter staggered the recording of the two July 15, 2006

5    grant deeds, which gave Salvador and Vicky time to encumber the property after the first grant deed

6    was recorded but before the second grant deed restored Plaintiffs to the title.  Those allegations, if

7    expanded and presented with more particularity, might be sufficient to state a claim against NATC

8    for aiding and abetting fraud or aiding and abetting elder abuse.  Plaintiffs would have to allege facts

9    demonstrating that Carroll's knowledge regarding Plaintiffs' lack of English, and apparent lack of

10   understanding regarding the significance of the documents they signed, was attributable to NATC.

11   The Court notes that Plaintiffs may not be able to allege the necessary facts consistent with Federal

12   Rule of Civil Procedure 11, given their assertion in their opposition brief that actually Carroll was

13   *not* present at the Mortgagepointers' office on the date that Plaintiffs signed the grant deed and other

14   documents.  *See* Opp. at 3, ECF 38.  If Carroll was not present, it is unclear how NATC would have

15   known that Plaintiffs could not read English and did not know what they were signing.

16          Whether or not Plaintiffs ultimately are able to allege viable aiding and abetting claims

17   against NATC, they have not done so to date.  As presently framed, the SAC does not set forth facts

18   showing that (a) NATC knew that the conduct of Salvador, Vicky, and Mortgagepointers breached a

19   duty to Plaintiffs or would result in tortious injury to Plaintiffs and (b) gave substantial assistance or

20   encouragement to those ends.  *See Davenport*, 725 F. Supp. 2d at 882.  Plaintiffs' claims of aiding

21   and abetting fraud are particularly deficient, as they have not alleged the who, what, when, where,

22   and how of the misconduct charged.  *See Kearns*, 567 F.3d at 1124.

23          Claim 7, for unfair business practices, fails because Plaintiffs have not as of yet alleged facts

24   showing that NATC participated in a scheme to defraud them or engaged in any other "unlawful,

25   unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.

26          Claim 9, negligence, fails to state a claim because Plaintiffs have not identified any duty that

27   NATC owed to Plaintiffs.  *See Ileto v. Glock, Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003) (elements of

28   negligence are duty, breach, causation, and damages).

1    Claim 11, for declaratory relief, fails because Plaintiffs have not alleged any viable claim

2    demonstrating the existence of an actual controversy.

3    Accordingly, the motion to dismiss brought by NATC is GRANTED with leave to amend.

4    **IV.    ORDER**

5    For the foregoing reasons,

6    (1)    both motions to dismiss are GRANTED with leave to amend;

7    (2)    leave to amend is granted only to cure the defects noted herein – Plaintiffs may not

8           add parties or claims without leave of the Court; and

9    (3)    any amended complaint shall be designated as the Third Amended Complaint and

10          shall be filed on or before October 15, 2014.

11

12   **IT IS SO ORDERED.**

13

14   Dated:  September 24, 2014

15                                                              _____

                                                               BETH LABSON FREEMAN

16                                                             United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California